IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:02-CV-292-H(3)

| | | |
|---|---|---|
| ELAINE L. CHAO, Secretary of United States Department of Labor, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | ORDER |
| FAYETTEVILLE AREA LOCAL 984, AMERICAN POSTAL WORKERS UNION, | ) ) ) ) ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for summary judgment. All parties have responded. On June 11, 2003, the court also held a hearing where it allowed the parties to address the propriety of applying the doctrine of equitable tolling to the statute of limitations created by 29 U.S.C. § 482(b). Therefore, this matter is ripe for adjudication.

**STATEMENT OF THE CASE**

Under the Labor-Management Reporting and Disclosure Act ("LMRDA" or "the Act") the Secretary of the United States Department of Labor ("the Secretary" and "DOL" respectively) is authorized to bring a civil action against a labor organization if, after an investigation, there is probable cause to believe that the union's election procedures were violative of § 481 of the LMRDA. See 29 U.S.C. § 482(b). The Secretary may not bring suit without

first receiving a timely complaint from a union member alleging violations of the Act. See 29 U.S.C. § 482(a). For the Secretary's civil action to be deemed timely, it must be filed with the federal district court where the union maintains its principal office, within sixty days of the filing of the union member's complaint. See 29 U.S.C. § 482(b). If the union is found in violation of the Act by a preponderance of the evidence, the Secretary may remove the current officers and hold another election under her supervision. See 29 U.S.C. § 482(c),(b).

The facts, viewed in the light most favorable to the plaintiff, are as follows. On November 15, 2001, Fayetteville Area Local 984, American Postal Workers Union ("Local 984") conducted its triennial election, which resulted in the reelection of Tony McKinnon as president. Mr. McKinnon was a part of a slate of candidates, all of whom were successfully elected.

On February 19, 2002, Benny Smith, who was defeated in his effort to gain the Trustee of Maintenance position, filed a complaint with the Secretary alleging procedural violations. The following week, on February 22, 2002, Terry Alston, who was defeated by Mr. McKinnon in his candidacy for president, also filed a complaint. These complaints were virtually identical.[1] One

---

[1] The allegations in these complaints ranged from tampering with the voting ballots to using union funds to support the incumbent's candidacy. However, these allegations were false based on the evidence presented. For example, the complainants allege that Mr. McKinnon used union funds to pay for duplications of campaign materials and used union office space. It was shown, however, that Mr. McKinnon had rented a personal office in the same building as the union

2

allegation was that the incumbent president used "union materials" during his campaign for reelection, in that he included in his campaign material two letters from Mr. Alston which were received in his official capacity as union president.

In response to these complaints, the DOL began an investigation. The majority of the investigation was conducted by Robert Hayes, an investigator for the DOL. The time line for the investigation is as follows:

1. February 21, 2002, Robert Tunstall, Secretary/Treasurer of the American Postal Workers Union was interviewed. He discussed the complaint procedure and found no violations had occurred.

2. February 22, 2002, Investigator Hayes interviewed Mr. McKinnon. The interview was extensive and touched on all allegations in the union members' complaints. Mr. McKinnon agreed to supply Investigator Hayes with supporting documentation to corroborate his version of the events, which he did the following week.

3. February 22, 2002, Investigator Hayes interviewed the Chair of the Election Committee, Diann Armstrong. This interview was also extensive. Ms. Armstrong answered all questions propounded by Mr. Hayes.

4. February 26, 2002, all the ballots were received and reviewed by Investigator Hayes. He concluded that the union's tally of the votes was correct and that the "relatively few duplicate ballots that were voted in the election also disputes the complainant's suspicions of improper conduct by the election committee." He found, as the union did, that Mr. McKinnon received 226 votes and Mr. Alston, 117 votes. (Def. Ex. 6.)

5. March 6, 2002, Mr. McKinnon was interviewed again by Investigator Hayes. During this interview, Mr. Hayes requested an interview with Local 984's Secretary/Treasurer Thomas Macon. This request was granted.

---

office as headquarters for his reelection effort and rented a copy machine to make duplicates of campaign materials. Thus, these allegations were not included in the Secretary's complaint.

6. March 7, 2002, Investigator Hayes interviewed Mr. Macon who provided receipts and documentation in the interview.

7. March 12, 2002, Investigator Hayes composed a memo to his files indicating that he visited the union office and traversed the different rooms which encompass the office.

8. March 19, 2001, the DOL issued its investigative findings that the union had violated 29 U.S.C. § 481(g), by using "documents obtained from union files to aid" in the reelection of Mr. McKinnon, and violated § 481(c) by rescinding the handling fee for mailing campaign literature without notifying candidates and failing to notify candidates that duplicate ballots would be mailed.

9. March 28, 2002, Mr. McKinnon responded to the DOL's findings by letter and supplying another receipt.

10. March 29, 2002, Investigator Hayes called Mr. Macon at his residence and received no response but left an answering machine message. The next day Mr. Hayes called Mr. Macon's home again and received no response.

11. April 1, 2002, Investigator Hayes left a message for Mr. Macon at his home with another member of Mr. Macon's household. That day he also left a message for Mr. Macon at the post office where he is employed as a window clerk.

12. April 9 & 10, 2002, Investigator Hayes receives several affidavits from members of the election committee pertaining to the procedural matters which occurred during the election.

13. April 9, 2002, Mr. Macon was served with a subpoena requiring him to appear for a deposition on April 12, 2002.

14. April 12, 2002, Mr. Macon appeared and was deposed by Investigator Hayes.

As a result of this investigation, the Secretary filed a complaint on May 2, 2002, nine days after the 60-day period provided for in § 482(b) had elapsed. The relevant portions of the complaint allege that

> [s]ection 401(g) [§ 481(g)] was violated in

4

> the conduct of the defendant's November 15, 2001, election when union property, two letters in the possession of the union president solely because he held that office, were used to promote the candidacy of the incumbent president; and,
>
> [b]eginning on April 11, 2002, defendant failed to respond to numerous demands made by plaintiff on defendant for defendant's secretary/treasurer to appear and provide information for plaintiff's investigation... Consequently, on April 9, 2002, plaintiff served a subpoena <u>ad</u> <u>testificandum</u> upon defendant's secretary/treasurer... Defendant also failed to respond to those demands, thus obstructing plaintiff's investigation of this matter, until April 12, 2002.

(Compl. ¶¶ X & VIII.)

## COURT'S DISCUSSION

### I. Standard of Review

Summary judgment is appropriate pursuant to Fed. R. Civ. P. 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, <u>see</u> <u>Anderson</u>, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S.

5

574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). As this court has stated, summary judgment is not a vehicle for the court to resolve disputed factual issues. See Faircloth v. United States, 837 F. Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. See Anderson, 477 U.S. at 249.

In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 247-48. Accordingly, the court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on this motion. Faircloth, 837 F. Supp. at 125.

The Secretary seeks entry of summary judgment setting aside the November 15, 2001, election. The defendant first seeks summary judgment on procedural grounds arguing that the Secretary's complaint was not timely pursuant to § 482(b). Defendant has not argued that the union members' complaints were not properly before the Secretary, therefore the sole procedural issue before this court is whether the Secretary's complaint was timely.

According to the record, the Secretary had 60 days from the date Mr. Alston filed his complaint on February 22, 2002, to file

6

its civil action. Therefore, to be deemed timely, the complaint must have been filed by April 23, 2002; however, the Secretary filed its complaint on May 2, 2002. To save its action, the Secretary argues that the 60-day period should be tolled due to the defendant's alleged obstruction of the investigation. The defendant counters that the 60-day period should be strictly construed and that plaintiff's noncompliance has divested this court of jurisdiction over this action. In the alternative, the defendant argues that should this court find it has jurisdiction, the claim should still be dismissed because the plaintiff has not presented any evidence of obstruction which would merit tolling the statutory period. The court agrees with the defendant's alternative reasoning.

As a threshold matter, this court has not been divested of jurisdiction due to plaintiff's untimely complaint. Though the statute at issue states that the Secretary "shall" file a civil action within 60-days, the use of such mandatory language by Congress does not automatically create a jurisdictional bar. See Brock v. Pierce County, 476 U.S. 253, 258-262 (1986); overruling City of Edmonds v. U.S. Dept. of Labor, 749 F.2d 1419 (9th Cir. 1984). Specifically, the Supreme Court reasoned that when the underlying statute relates to the vindication of public rights as opposed to private rights and the agency has to prove the underlying violation during the allotted time frame, the use of the

7

word "shall" by Congress is not enough to divest courts of jurisdiction. See id.² This reasoning is squarely applicable to the case at bar.

Furthermore, the court views the question of jurisdiction as an auspice of congressional intent. The purpose behind the LMRDA is to allow the agency and the parties great "latitude" in their efforts to resolve internal grievances. See Calhoon v. Harvey, 379 U.S. 134, 140 (1964). Were this court to find that the 60-day time frame imposes jurisdictional limitations, the parties would not be permitted to waive this time frame by private agreement because private parties cannot confer jurisdiction upon the court. Thus, in an effort to give breath to congressional intent, this court finds that the 60-day time frame does not impose jurisdictional restrictions. Having found that this court has jurisdiction over this action, the court now turns to the question of whether the time frame should be tolled based on the facts of this case.

It has long been a principle of the Court that statutory periods can be tolled in the case of fraudulent concealment. See Exploration v. U.S., 247 U.S. 435 (1918). This exception is particularly pertinent in light of the purpose behind the LMRDA to protect the rights of employees and prevent or eliminate improper

---

² In dicta, the Court discussed the Ninth Circuit's position that in order for a statutory time frame to create a jurisdictional bar, it must use mandatory language as well as articulate consequences for non-compliance. See id. However, the Court specifically refrained from adopting or rejecting this standard. See id. at n.9.

8

election practices. See 29 U.S.C. § 401. To hold otherwise would "allow delay or deliberate concealment of election records to make it impossible for the Secretary to resolve a complaint to the point of finding (or not finding) probable cause, [and] would offer a tempting method of defeating the basic purpose of [the LMRDA]." Brock v. American Postal Workers Union, AFL-CIO, Chicago Local, 815 F.2d 466, 470 (7th Cir. 1987).

This court finds the reasoning of the Seventh Circuit persuasive and agrees that "the sixty-day limitations period may be tolled by conduct on the part of the Union which impedes or delays the Secretary's investigation." Id. This reasoning also mirrors the Fourth Circuit's general standard for equitable tolling. See Lekas v. United Airlines, Inc., 282 F.3d 296, 301 (4th Cir. 2002) (equitable tolling applies when a plaintiff is prevented from asserting his claim due to some wrongful conduct on the part of the defendant). However, finding that equitable tolling is applicable to the instant action does not end the inquiry. The burden of establishing that the defendant has obstructed or impeded the DOL investigation is on the Secretary.

In order for plaintiff's claim to be deemed timely, the statutory period must be tolled for at least nine days. Plaintiff argues that the statutory period should be tolled from March 29, 2002, until April 12, 2002, based on the alleged obstruction. (Pl. Sum. Judg. Mot. p. 23.) Even viewing all inferences in the light

9

most favorable to the plaintiff, the court does not find that the defendant's actions from March 29 to April 12 were obstructive of the investigation. First, Investigator Hayes already questioned Mr. Macon. During that prior interview, Mr. Macon was forthright and provided the investigator with corroborating documents and financial information. Though the court is sensitive to the government's need to have the ability to reexamine union members in order to make its probable cause determination, Congress was clear in its directive that the Secretary be allotted 60 days to make its determination of probable cause.

The standard for equitable tolling in this circuit is a stringent one. See Lekas, 282 F.3d at 301. Thus, the government must show that the actions of the defendant were sufficiently egregious to merit such an exacting equitable remedy. Here, the agent telephoned Mr. Macon on Friday, March 29, followed up with another phone call Saturday, Sunday, and telephoned him on Monday at his place of business. The government then waited ten days to issue an administrative subpoena, which Mr. Macon ultimately complied with. During oral argument, the government characterized Mr. Macon's actions as "recalcitrant." However, the court cannot equate recalcitrance with obstruction of justice.

Second, Mr. Macon appeared on the date set by the subpoena. The cases cited by the plaintiff in support of equitable tolling are distinguishable from the case at bar, in that those cases

10

involved a total lack of cooperation on the part of the defendant. See Brennan v. Independent Lift Truck Builders Union, 490 F.2d 213, 216 (7th Cir. 1974) (tolling 60 days beginning when Secretary requested information to date compliance was compelled by district court); Brock, 815 F.2d at 470 (tolling time period where union members failed to keep appointments with investigator and would not provide any information to investigator). Here, as evidenced by the record, the defendant was cooperative with the DOL from the start of the investigation.

Third, the Secretary did not allege in her complaint that the obstruction began March 29; rather she points to April 11 as the start of the obstruction.[3] Therefore, accepting the pleadings as true, the plaintiff would only be entitled to one extra day to file the complaint. Fourth, the plaintiff has supplied the court with no basis for its failure to comply with the 60-day deadline, when it took Mr. Macon's deposition on April 12 and the deadline for filing the complaint did not ripen until April 23. Thus, the court finds that the Secretary's complaint is untimely and not subject to equitable tolling.

---

[3] During oral argument, the government alerted the court to the fact that the government mistakenly used the date April 11 when it intended to use the date April 1. However, the government has not made a motion pursuant to Rule 15 of the F.R.C.P. to correct this typographical error, thus the court must take the pleadings as filed.

## CONCLUSION

Therefore, defendant's motion for summary judgment is GRANTED. The clerk is directed to close this case.

This 17th day of April, 2003.

----------
MALCOLM J. HOWARD
United States District Judge

At Greenville, NC
#4